SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**
JUL 28 2016
ARTHUR JOHNSTON
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CLARENCE JAMISON                                                    PLAINTIFF

VERSUS                                     NO. *3:16 CV 595 CWR-LRA*

TOWN OF PELAHATCHIE
AND NICK MCCLENDON,
In His Individual Capacity                                     DEFENDANTS

                                                    JURY TRIAL DEMANDED

<u>COMPLAINT</u>

This is a civil action to recover actual, compensatory, and punitive damages for

the Defendants' violations of Mr. Jamison's rights pursuant to the Fourth Amendment

and Fourteenth Amendment made actionable pursuant to 42 U.S.C. § 1983.  For cause,

Mr. Jamison shows the Court as follows:

PARTIES

1.  The Plaintiff, Clarence Jamison, is an adult resident citizen of Neeses, South

Carolina 29107.

2.  The Defendant, Town of Pelahatchie ("Pelahatchie"), is a municipal

corporation organized pursuant to the laws of Mississippi.  The Defendant Pelahatchie

may be served with process by service of a summons and complaint upon its City Clerk,

Ms. Bettye Massey, 705 Second Street, Pelahatchie, Mississippi 39145.

3.  The Defendant Nick McClendon, is an adult resident citizen of Rankin

County, Mississippi.  The Defendant McClendon may be served with process by service of a summons and complaint upon him at 108 South Brooks Street, Pelahatchie, Mississippi 39145.

### JURISDICTION & VENUE

4.  This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 (Federal Question), and 28 U.S.C. § 1343(a)(3) (Civil Rights).

5.  Venue is proper in the Southern District of Mississippi, pursuant to 28 U.S.C. § 1391, since substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

### CAUSE OF ACTION

6.  On or about July 29, 2013, Mr. Jamison found himself driving home to South Carolina, from a vacation in Las Vegas, Nevada.  Mr. Jamison traveled home through Mississippi East-bound on Interstate 20.

7.  Upon entering the jurisdiction of the Town of Pelahatchie, on I-20, Mr. Jamison passed a patrol car sitting on the right hand side of the interstate.

8.  After passing the patrol car Mr. Jamison was immediately blue-lighted and pulled over.

9.  Mr. Jamison had not committed any traffic violation and no objectively reasonable basis existed for him to have been pulled over.

2

10. Mr. Jamison was stopped at approximately 7:30 p.m., while there was still daylight.

11. The Defendant McClendon, who ultimately refused to identify himself despite several requests from Mr. Jamison, approached Mr. Jamison's car and asked for his license and registration.

12. Mr. Jamison complied by producing his valid license and registration and the Defendant McClendon returned to his patrol car.

13. When the Defendant McClendon returned to Mr. Jamison's car, he handed back the license and registration to Mr. Jamison. At that point, Mr. Jamison asked the Defendant McClendon why he had been pulled over.

14. The Defendant McClendon responded that he pulled over Mr. Jamison because the temporary tag on his car was curled at the bottom.

15. This statement by the Defendant McClendon was untrue, as the temporary tag was bolted onto the car as shown in the photograph attached to this Complaint as Exhibit "A" and fully incorporated into this Complaint by reference.

16. Despite fully resolving the stated pretextual reason for stopping Mr. Jamison, the Defendant McClendon began asking Mr. Jamison questions regarding where he was traveling from and going to.

17. This roadside inquisition by the Defendant McClendon needlessly extended

3

Mr. Jamison's stop beyond the time necessary to resolve the stated pretextual reason for the stop.

18.  Mr. Jamison answered the Defendant McClendon's questions and, assuming he was now free to leave, prepared to drive off and resume his travel home.

19.  However, prior to Mr. Jamison driving off, the Defendant McClendon placed his hand and arm inside Mr. Jamison's car, physically barring Mr. Jamison from driving off, and told Mr. Jamison to hold on a minute.

20.  The Defendant McClendon then asked if he could search Mr. Jamison's car. When Mr. Jamison asked the Defendant McClendon "Why?," he told Mr. Jamison that he had received a call that there were 10 kilos of cocaine in his car.  Mr. Jamison told the Defendant McClendon there was no cocaine in his car.

21.  The Defendant McClendon's statement that he wanted to search Mr. Jamison's car, due to an alleged call regarding drugs, was either a deliberate falsehood, making his earlier assertion that he stopped Mr. Jamison due to the tag a falsehood, or did not constitute reasonable suspicion to justify stopping and detaining Mr. Jamison.

22.  Despite Mr. Jamison's desire to continue on his way, the Defendant McClendon physically prevented Mr. Jamison from driving off.

23.  While unable to drive away due to the Defendant McClendon physically keeping his arm in Mr. Jamison's car, the Defendant McClendon continued to ask Mr.

4

Jamison, if he could search the car.

23. Mr. Jamison, cognizant of the fact that he had nothing illegal in his car and that his continuing refusal to give consent would only further delay his trip home, relented to the Defendant McClendon's restraint of his freedom to continue on his travel and told the Defendant McClendon that he would allow a search of his car if he was within view of and present during the search.

24. Mr. Jamison's consent to search was not voluntarily and freely given but was coerced by the Defendant McClendon's physical restraint of Mr. Jamison's freedom to continue his travel.

25. Mr. Jamison was asked to step out of the car and submit to a pat down. Mr. Jamison complied and the Defendant McClendon, finding nothing, told him to step to the front of the patrol car.

26. Once Mr. Jamison was standing in front of the patrol car, the Defendant McClendon began searching Mr. Jamison's car. The Defendant McClendon thoroughly searched the passenger area of Mr. Jamison's car, finding nothing.

27. The Defendant McClendon saw Mr. Jamison's cell phone in the car and began looking through it. The Defendant McClendon then resumed searching the rest of the car, again, finding nothing.

28. The Defendant McClendon then took Mr. Jamison's cell phone back to his

patrol car and continued to look through it.  It appeared to Mr. Jamison as if the

Defendant McClendon placed a call from his phone.

29. The Defendant McClendon returned Mr. Jamison's phone to him and

questioned him again about where he was driving from.  Mr. Jamison informed the

Defendant McClendon, again, and the Defendant McClendon told Mr. Jamison that his

"story" just wasn't "panning out."

30. Mr. Jamison had been detained for approximately 45 minutes, at this point,

when the Defendant McClendon searched Mr. Jamison's car a second time.

31. The second search of Mr. Jamison's car took approximately 45 more minutes.

The Defendant McClendon told Mr. Jamison that when he got a "hunch" about a

vehicle, that nine out of ten times, his hunch proved true.

32. At that point, Mr. Jamison asked another officer at the stop if he would be

allowed to use the bathroom and, with that officer's permission, proceeded to the edge

of some woods to relieve himself.

33. When Mr. Jamison returned to the front of the patrol car, the Defendant

McClendon made a false allegation by suggesting that Mr. Jamison's license was

suspended.  Mr. Jamison told the Defendant McClendon there was no way his license

was suspended.

34. The Defendant McClendon then went into his patrol car and retrieved a

6

borescope to search Mr. Jamison's car..

35. The Defendant McClendon told Mr. Jamison that he would not arrest him if he found a "roach" in the car, he just wanted the 10 kilos of cocaine.

36. The Defendant McClendon then searched Mr. Jamison's car a third time taking another approximately 30-45 minutes to do so.

37. By this time it was completely dark outside. The Defendant McClendon returned to the patrol car again and spoke into his radio.

38. The Defendant McClendon then falsely stated to Mr. Jamison that the vehicle check came back stolen. Mr. Jamison told the Defendant McClendon that he was out of his mind.

39. The Defendant McClendon returned to Mr. Jamison's car and began to search it yet again.

40. Mr. Jamison asked to use the bathroom again and was allowed to go to the edge of the woods to relieve himself.

41. The Defendant McClendon then told Mr. Jamison that he had a K-9 unit present and he was going to use the K-9 to search his car. The K-9 searched the interior and exterior of Mr. Jamison's car without alerting to the presence of drugs. The Defendant McClendon put the K-9 unit back in a patrol car and proceeded to search Mr. Jamison's car again.

42. While Mr. Jamison stood where instructed, at the front of the patrol car, an 18-wheeler passed by and Mr. Jamison heard a loud popping noise.

43. Feeling unsafe, Mr. Jamison moved to the side of his car, but was told to return to the front of the patrol car by the Defendant McClendon.

44. The Defendant McClendon then told Mr. Jamison that he did not like his attitude. Mr. Jamison, wanting to avoid being goaded into a confrontation by the Defendant McClendon, kept quiet.

45. Another officer then called the Defendant McClendon to return to the driver's side of the patrol car. The two officers spoke, out of earshot of Mr. Jamison.

46. The Defendant McClendon then asked Mr. Jamison for his driver's license again. Mr. Jamison complied with this request.

47. The Defendant McClendon returned to his patrol car with the license for approximately 10-15 minutes. The Defendant McClendon got out of the patrol car and handed Mr. Jamison his license.

48. Mr. Jamison, assuming he was finally going to be allowed to leave, started walking towards his car with the Defendant McClendon. The Defendant McClendon then asked Mr. Jamison for his license again, walked back to his patrol car with the license, and talked on the radio some more.

49. When he stopped talking on his radio, the Defendant McClendon handed

8

Mr. Jamison his license and returned to searching the open hood area of Mr. Jamison's car with the borescope.

50. When he finished searching with the borescope, the Defendant McClendon returned to his patrol car and grabbed a screwdriver.

51. The Defendant McClendon returned to the hood area of Mr. Jamison's car with the screwdriver, but Mr. Jamison was unable to see what he was doing. The Defendant McClendon then returned to the patrol car.

52. At this point, the Defendant McClendon told Mr. Jamison that he could return to his car. The Defendant McClendon told Mr. Jamison to open and close the convertible top so that he could inspect it. Mr. Jamison's belongings were then returned to his car by two other officers.

53. The Defendant McClendon handed Mr. Jamison his flashlight and asked him to check the car for damage. Due to the darkness and his haste to leave, Mr. Jamison did not notice the damage done to his car during the Defendant McClendon's multiple searches.

54. The Defendant McClendonr finally handed Mr. Jamison his keys and asked him if they were "okay."

55. Mr. Jamison told the Defendant McClendon that he wanted some information from him. The Defendant McClendon responded that he could "charge"

Mr. Jamison with something and asked when he could come back to deal with the

charge.  Mr. Jamison did not respond to the Defendant McClendon's threat.

56.  The Defendant McClendon then handed Mr. Jamison a "Courtesy Warning,"

which is attached hereto as Exhibit B and is fully incorporated into this Complaint by

reference.

57.  Mr. Jamison was finally allowed to leave at approximately 11:30 p.m.

58.  The Defendant McClendon consciously took Mr. Jamison's race into

consideration when he stopped, searched and detained Mr. Jamison.

59.  Only later did Mr. Jamison notice that significant damage had been done to

his car during the Defendant McClendon's search.

60.  The Defendant Pelahatchie maintained a *de facto* policy, practice, custom, or

usage which authorized its officers to make illegal stops of motorists, particularly

African-American motorists, as a pretext for conducting drug searches.

61.  The Defendant Pelahatchie authorized, condoned and ratified the

unconstitutional stop, search and detention of Mr. Jamison, by the Defendant

McClendon.

62.  The Defendant McClendon was at all times relevant to this civil action acting

under color of state law.

63.  The Defendant McClendon, at all times relevant to this civil action, acted

with reckless disregard towards Mr. Jamison's federally protected rights.

### Claim 1 (Fourth Amendment - Stop, Search & Detention)

64. The Defendant McClendon and the Defendant Pelahatchie are liable to Mr. Jamison for falsely stopping him, searching his car, and detaining him in the absence of any objectively reasonable basis for the stop, search and detention, and in the absence of either reasonable suspicion or probable cause to stop, search, and detain Mr. Jamison.

65. As a direct and proximate result of the Defendants' acts which violated Mr. Jamison's constitutional rights, he suffered financial and emotional injury.

### Claim 2 (Fourteenth Amendment - Equal Protection)

66. The Defendant McClendon and the Defendant Pelahatchie are liable to Mr. Jamison for using his race a motivating factor in the decision to stop him, search his car, and detain him in the absence of any objectively reasonable basis for the stop, search and detention, and in the absence of either reasonable suspicion or probable cause to stop, search, and detain Mr. Jamison.

67. As a direct and proximate result of the Defendants' acts which violated Mr. Jamison's constitutional rights, he suffered financial and emotional injury.

### Claim 3 (Fourth Amendment - Seizure of Property & Damage)

68. The Defendant McClendon is liable to Mr. Jamison for recklessly and deliberately causing significant damage to Mr. Jamison's car by conducting an unlawful

search of the car in an objectively unreasonable manner amounting to an unlawful seizure of his property.

69.  As a direct and proximate result of the Defendant McClendon's acts which violated  Mr. Jamison's constitutional rights, he suffered financial and emotional injury.

WHEREFORE, PREMISES CONSIDERED, Mr. Jamison prays for actual and compensatory damages against all defendants, in an amount to be determined by the trier of fact, for punitive damages against the Defendant McClendon, in his individual capacity, in an amount to be determined by the trier of fact, for a reasonable attorney's fee pursuant to 42 U.S.C. § 1988, for all allowable costs of this civil action, and for any and all other relief to which Mr. Jamison is entitled in law or equity.

Respectfully submitted, this the 27th day of July, 2016.

_____
VICTOR I. FLEITAS
MS BAR NO. 10259

Victor I. Fleitas, P.A.
452 North Spring Street
Tupelo, MS 38804
662.840.0270 / Phone
662.840.1047 / Facsimile
fleitasv@bellsouth.net / Email

Attorney for Clarence Jamison

12