**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**CLARENCE JAMISON**                                                                 **PLAINTIFFS**

**VS.**                                        **CIVIL ACTION NO.: 3:16-cv-00595-CWR-LRA**

**TOWN OF PELAHATCHIE ET AL.**                                            **DEFENDANTS**

**DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

One day before the three year statute of limitations period expired, Plaintiff Clarence Jamison filed this 42 U.S.C. § 1983 action against Defendants Nick McLendon and the Town of Pelahatchie.[1]  It alleges violations of the Fourth and Fourteenth Amendments in relation to a traffic stop conducted on Interstate 20.[2]  Because there are no genuine issues of material fact, summary judgment should be granted under Rule 56.

**BACKGROUND**

There is an interlocal agreement between the City of Richland and the Town of Pelahatchie, which permits Richland law enforcement officers to police I-20 running through Pelahatchie.[3]  I-20 "is a common drug-trafficking route[.]"[4]  *See, e.g., United States v. Cruz*, 2009 WL 3448836, *3 (S.D. Miss. 2009).  McLendon is employed by Richland and "has worked highway interdiction for the City of Pearl and the City of Richland Police Departments since the year 2008."[5]  In that time period, he "has self-initiated over 103 criminal interdiction cases involving bulk smuggling of contraband" and has "assisted in over 100 criminal interdiction

---

[1] Complaint, Doc. No. 1.

[2] *Id.*

[3] Interlocal Agreement, Ex. A_.

[4] *See also* Scott Simmons, *Task Force: I-20 becoming major drug pipline*, WAPT NEWS, *available at*  http://www.wapt.com/article/task-force-i-20-becoming-major-drug-pipeline-1/2085442 (last visited November 30, 2017).

[5] McLendon CV, Ex. B.

cases" as well.[6]   Officer McLendon's efforts have "led to the disruption of several Drug Trafficking Organizations."[7]   He is "recognized as an expert witness in the fields of Criminal Interdiction and Drug Trafficking [by] the States of Mississippi and Louisiana."[8]

Officer McLendon's patrol vehicle is equipped with a License Plate Recognition ("LPR") system.[9]   LPR "is a computer assisted device with a camera which reads and interprets license plates of other vehicles[.]"   *See, e.g., United States v. Williams*, 2014 WL 2573299, *2 (E.D. Mo. 2014).   "It gives an alert by way of a computer screen on the inside of the vehicle which is generated and operated by cameras on the exterior of the car which takes pictures of the license plate." *Id*.

This civil lawsuit grew out of a stop conducted by Officer McLendon on July 29, 2013.[10] Officer McLendon was situated on the side of the Interstate near Pelahatchie, scanning tags through use of his LPR system.[11]   When Jamison passed by, Officer McLendon's LPR system did not recognize the tag because Jamison's vehicle did not have an official license plate.[12]   It instead had a temporary tag.[13]

Officer McLendon pulled onto the Interstate and behind Jamison.[14]   He was unable to clearly view the temporary tag and blue lighted Jamison.[15]   Jamison pulled over to the right shoulder of the interstate.[16]

---

[6] *Id*.

[7] *Id*.

[8] *Id*.

[9] McLendon Depo. at 20-25, Ex. C.

[10] Complaint, Doc. No. 1.

[11] McLendon Depo. at 26-27, Ex. C.

[12] *Id*. at 27.

[13] *Id*.

[14] *Id*. at 27-28.

[15] *Id*.

[16] Jamison Depo. at 50, Ex. D.

Upon walking up to Jamison's vehicle, Jamison informed Officer McLendon that he was traveling from Phoenix, Arizona.[17]   Officer Jamison, an experienced interdiction officer, was aware that Phoenix is a major drug corridor.[18]   Jamison provided Officer McLendon a South Carolina Driver's License as well as vehicle papers showing that Jamison's Mercedes Convertible had been purchased in Reading, Pennsylvania 13 days earlier.[19]

Officer McLendon called in Jamison's information to his dispatcher.[20]   While dispatch was checking Jamison's Driver's License and VIN number, Officer McLendon returned to Jamison's vehicle.[21]   Officer McLendon was awaiting a return phone call from his dispatcher.[22]

Back at the vehicle, Officer McLendon requested permission to search Jamison's car.[23] Jamison initially questioned Officer McLendon about why he wanted to conduct a search but later provided permission as long as Jamison "could see what [Officer McLendon was] doing[.]"[24]   As Officer McLendon began the search, the dispatcher phoned him and informed him that they were have difficulties confirming that Jamison's license was not suspended.[25] Jamison's driving record shows that his license was suspended various times prior to July 2013 for alcohol-related offenses.[26]

---

[17] *Id*. at 45; McLendon Depo. at 30, Ex. C.

[18] McLendon Depo. at 30, Ex. C.

[19] Jamison Depo. at 53-54, 88, Ex. D; Jamison Driver's License, Ex. E; Jamison's Purchase Agreement, Ex. F.

[20] Jamison Depo. at 54-55, Ex. D; McLendon Depo. at 38-41, Ex.C.

[21] McLendon Depo. at 38-40, Ex. C.

[22] *Id*. at 47-48.

[23] Jamison Recorded Statement at 5-7, Ex. G; Jamison Depo. at 56-62, Ex. D.

[24] *Id*.

[25] McLendon Depo. at 47-48, Ex. C.

[26] Jamison South Carolina Driving Record, Ex. H.

Officer McLendon's search uncovered nothing illegal.[27]  Officer McLendon then asked Jamison if he could deploy his K-9 to complete the search, and Jamison agreed to Officer McLendon's use of the K-9.[28]  The K-9 likewise uncovered nothing illegal.[29]

At the conclusion of the search, Officer McLendon gave Jamison his flashlight and instructed him to let him know if anything was damaged.[30]  Officer McLendon told Jamison that he would pay for any damages.[31]  Jamison told Officer McLendon that he did not see any damage.[32]

This lawsuit followed on July 28, 2016, nearly three years later.[33]  Jamison alleges that Officer McLendon caused approximately $4,000.00 in property damage to his vehicle, even though he said there was no property damage at the time of the stop and even though he admits that he has never made repairs to the vehicle.[34]  Jamison also alleges that Officer McLendon caused him "emotional distress," even though he admits that Officer McLendon was friendly towards him and even though he has never sought any medical treatment for the alleged emotional distress.[35]  Discovery has concluded.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when there are no genuine issues of material fact.  A fact is material if it is essential under the applicable theory of recovery, and, without it, the nonmovant is unable prevail.  *See Celotex v. Catrett*, 477 U.S. 317 (1986).  The movant's burden is to merely point out the absence

---

[27] McLendon Depo. at 53, Ex. C.

[28] Jamison Depo. at 72, Ex. D.

[29] *Id*. at 73.

[30] *Id*. at 78-79.

[31] *Id*. at 78.

[32] *Id*. at 79.

[33] *See* Complaint, Doc. No. 1.

[34] Jamison Depo. at 97, 100-101, Ex. D.

[35] *Id*. at 63, 101-03.

of evidence supporting the nonmovant's case.  *See Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996).

Once the movant meets his or her burden, the nonmovant must go beyond the pleadings and "identify specific evidence in the record, and articulate the 'precise manner' in which that evidence support[s] [his] claim."  *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). Allegations without substance will not defeat summary judgment.  *See Celotex*, 477 U.S. at 321. If the nonmovant fails to meet his or her burden, then summary judgment should be granted.  *See Stults*, 76 F.3d at 656-57 (citing *Tubacex, Inc. v. M/V Risan*, 45 F. 3d 951, 954 (5th Cir. 1995)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment[.]"  *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

## ARGUMENT & AUTHORITIES

Jamison brings his Section 1983 claims against the Town of Pelahatchie and Officer McLendon in his individual capacity.[36]  In particular, Jamison alleges violations of his Fourth and Fourteenth Amendment rights.[37]  According to Jamison, both Officer McLendon's stop and subsequent search were unconstitutional.[38]

The applicable legal standards that govern are settled.  Actions against municipalities are analyzed under a framework that requires a plaintiff to show both (1) that a violation of the Constitution or federal law occurred and (2) that a governmental policy or custom was the moving force behind the violation.  *See, e.g., Duvall v. Dallas Cty., Tex.*, 631 F.3d 203, 209 (5th Cir. 2011). Alternatively, individual-capacity defendants enjoy the qualified-immunity defense, meaning that a plaintiff must show both (1) that a violation of the Constitution or federal law

---

[36] Complaint, Doc. No. 1.

[37] *Id.*

[38] *Id.*

occurred and (2) that the individual-capacity defendants' actions were objectively unreasonable under clearly established law.  *See, e.g., Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005).

Jamison's claims are deficient in their totality.  Most fundamentally, there can be no liability against any of the defendants because Jamison cannot prove a constitutional violation. Moreover, even if Jamison could make such a showing, there still would be no liability because he cannot establish a "governmental policy or custom" against Pelahatchie or objectively unreasonable conduct under clearly established law against Officer McLendon.  The analytical path towards dismissal is addressed in turn.

**No Constitutional Violation.**  Jamison's Fourth and Fourteenth Amendment claims are aimed at the same conduct, specifically Officer McLendon's stop and subsequent search.[39]  But the claims require different standards of proof for liability purposes.  The Fourteenth Amendment claim, on the one hand, requires a showing that Officer McLendon's actions were motivated by Jamison's race.  *See, e.g., Whren v. United States,* 517 U.S. 806, 813, (1996).[40] The Fourth Amendment claim, on the other hand, requires a showing that there was a lack of legal justification for Officer McLendon's actions, i.e. reasonable suspicion, probable cause, consent, etc.  *See, e.g., United States v. Turner*, 839 F.3d 429, 432-33 (5th Cir. 2016) (explaining that the Fourth Amendment's "reasonableness" inquiry requires sufficient justification for governmental action).  Neither claim has merit.

*Fourteenth Amendment.*  Jamison acknowledged at his deposition that Officer McLendon told him that he stopped him because of his tag.[41]  Once stopped, Officer McLendon

---

[39] *Id.*

[40] *See also Suber v. Guinta*, 927 F.Supp.2d 184, 202 (E.D.Pa. 2013) ("Intentional or purposeful discrimination is a necessary element of an equal protection claim.").

[41] Jamison Depo at 83-84, Ex. D.

had good reason to be suspicious of Jamison, but it did not have anything to do with Jamison's race.  Jamison was driving from a known drug location on the West Coast (Phoenix, Arizona),[42] he was driving down a known drug route (Interstate 20),[43] he was driving a car that had been purchased on the East Coast 13 days prior,[44] he handed Officer McLendon a South Carolina Driver's License,[45] and the vehicle he had a temporary tag from Pennsylvania.[46]  Nothing other than Jamison's own speculative opinion has been offered in the way of evidence on the Equal Protection claim.[47]  *See Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) (explaining that "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment").

Jamison simply cannot prove what he must prove to succeed under the Fourteenth Amendment.  Aside from having no evidence of a racial animus, he has no evidence that Officer McLendon treated him differently than any other similarly situated drivers.  *See, e.g., Lawson v. Martinez*,  2015 WL 1966069, *4 (W.D. Tex. 2015) (outlining the substantive requirements of a Fourteenth Amendment claim).  The Equal Protection claim fails.  *See, e.g., McNight v. Eason*, 227 Fed. App'x 356 (5th Cir. 2007) (holding that conclusory allegations of racial discrimination cannot support a viable equal protection claim).

*Fourth Amendment*.   Officer McLendon needed only reasonable suspicion to pull Jamison over.  *See, e.g., United States v. Wright*, 2012 WL 1636087, *1 (M.D. La. 2012) ("Investigatory stops, such as pulling over a vehicle, require reasonable suspicion to pass muster under the Fourth Amendment.").  Reasonable suspicion is "an objectively reasonable suspicion

---

42 *Id*. at 45; McLendon Depo. at 30, Ex. C.

43 *See, e.g., Cruz*, 2009 WL 3448836 at *3.

44 Jamison Depo. at 53-54, 88, Ex. D; Jamison's Purchase Agreement, Ex. F.

45 Jamison Driver's License, Ex. E.

46 McLendon Depo. at 27, Ex. C.

47 Jamison Depo. at 83-86, Ex. D.

that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *See United States v. Lopez–Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). "While 'an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.'" *See United States v. Gutierrez-Parra*, 2017 WL 4679266, *3 (5th Cir. Oct. 17, 2017) (quoted case omitted).

There was reasonable suspicion in this case for Officer McLendon to believe that Jamison was in violation of Mississippi law, which requires that "vehicles operated on Mississippi's highways must have tags 'conspicuously displayed on the vehicle being operated in such a manner that it may be easily read.'" *See Gonzalez v. State*, 963 So.2d 1138, 1143 (Miss. 2007) (quoting Miss. Code § 27–19–323); *see also* Mississippi Code § 27-19-40(1)(c) (providing that temporary tags must be displayed in "plain view"). Officer McLendon stopped Jamison because his LPR system did not recognize Jamison's temporary tag and because he could not clearly confirm its validity when he pulled behind Jamison.[48] *See, e.g., Wade v. State*, 33 So.3d 498, 504-06 (Miss. Ct. App. 2009) (holding that officer was justified in stopping individual with temporary tag); *see also Twenty Thousand Eight Hundred Dollars ($20,800.00) in U.S. Currency v. State ex rel. Miss. Bureau of Narcotics*, 115 So. 3d 137, 140 (Miss. Ct. App. 2013) (explaining that reasonable suspicion existed where officer mistakenly thought temporary out-of-state tag was expired because "a Mississippi [officer] [cannot] be charged with perfect knowledge of other states' conventions regarding temporary tags").

---

[48] McLendon Depo. at 27-28, Ex. C

In addition to the stop, Officer McLendon's search likewise was justified.[49]   Officer McLendon sought Jamison's consent after learning of the following facts: (1) that Jamison was driving from a known drug location on the West Coast (Phoenix, Arizona), (2) that Jamison was driving down a known drug route (Interstate 20), (3) that Jamison was driving a car that had been purchased on the East Coast 13 days prior, (4) that Jamison had a South Carolina Driver's License, and (5) that the vehicle Jamison was driving had a temporary tag from Pennsylvania. Jamison provided consent,[50] and "[c]onsent is a well-established exception to the requirements of a warrant and probable cause."  *See, e.g., United States v. Saleem*, 236 F.Supp.2d 625, 627-28 (N.D. Tex. 2002).[51]

Jamison alleges that his consent was not "voluntary,"[52] but that contention is unfounded. "To determine whether a person's consent is voluntary, [the Fifth Circuit] considers six factors: (1) the voluntariness of the suspect's custodial status; (2) the presence of coercive police procedures; (3) the nature and extent of the suspect's cooperation; (4) the suspect's awareness of his right to refuse consent; (5) the suspect's education and intelligence; and (6) the suspect's belief that no incriminating evidence will be found."  *See United States v. Escamilla*, 852 F.3d 474, 483 (5th Cir. 2017).  Jamison is without sufficient evidence to combat the validity of his admitted consent.  *See Stults*, 76 F.3d at 656 (explaining that the movant's burden is to merely point out the absence of evidence).[53]

---

[49] Any "detention" likewise was justified because, as will be explained, Jamison had no legal right to leave until the traffic stopped concluded and, once consent to search was provided, Jamison voluntarily remained on the scene.

[50] Jamison Recorded Statement at 5-7, Ex. G; Jamison Depo. at 56-62, Ex. D.

[51] *See also United States v. Rounds*, 749 F.3d 326, 338 (5th Cir. 2014) ("A search conducted pursuant to consent . . . remains one of the well-settled exceptions to the Fourth Amendment's warrant and probable-cause requirements.").

[52] *See* Complaint at ¶24, Doc. No. 1.

[53] Any argument about the duration of Officer McLendon's interaction with Jamison is without merit.  With respect to the initial stop, Officer McLendon had a right to detain Jamison until he received information back from the dispatcher.  *See Spence*, 667 F. App'x at 447 ("While waiting for the results of

According to Jamison, Officer McLendon engaged in coercive tactics because Officer McLendon did not allow him to leave as soon as he returned his Driver's License.[54] Significantly, however, at the time Officer McLendon returned Jamison's Driver's License, he had not yet received information back from the dispatcher.[55]  As such, the traffic stop was not complete, and Jamison had no legal right to leave.  *See, e.g., United States v. Spence*, 667 F. App'x 446, 447 (5th Cir. 2016) (holding that "the purpose of the traffic stop had not been completed" when consent was requested and obtained because the computer checks were not finished) (citing *U.S. v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993)).  Officer McLendon would have had the right to hold Jamison's Driver's License until the traffic stop was complete, and it is legally immaterial that Officer McLendon returned Jamison's Driver's License before receiving a return call from the dispatcher.  *See U.S. v. Brown*, 567 F. App'x 272, 280 n.5 (5th Cir. 2014).

Neither is it material that Jamison claims that Officer McLendon placed his arm in the vehicle while asking for consent.[56]  Again, at the time Jamison alleges this took place, Officer McLendon had not yet received a return call from the dispatcher[57] and thus Jamison had no legal right to leave.  *See, e.g., Spence*, 667 F. App'x at 447.  Plus, courts in this district have found coercive police tactics absent where restraints on a person's freedom were far greater.  *See, e.g., U.S. v. Olivarria*, 781 F. Supp. 2d 387, 395 (N.D. Miss. 2011) (finding no coercive police tactics where suspect was handcuffed when consent was given).  Jamison was not handcuffed, threatened, or otherwise intimidated by Officer McLendon.  *See U.S. v. Tompkins*, 130 F. 117,

---

computer checks, the police can question the subjects of a traffic stop even on subjects unrelated to the purpose of the stop.").  With respect to the subsequent search, any duration was justified by Jamison's consent.  *See U.S. v. Nguyen*, 553 F. App'x 391, 392 (5th Cir. 2014) (explaining that driver consented to prolonged detention by giving voluntary consent to search); *U.S. v. Kelly*, 981 F.2d 1464, 1470 (1993) (concluding that any unreasonable detention caused by officer's questioning was cured by voluntary consent).

[54] *See* Complaint at ¶24, Doc. No. 1.

[55] McLendon Depo. at 71, Ex. C.

[56] Jamison Depo. at 61, Ex. D.

[57] McLendon Depo. at 71, Ex. C.

122 (5th Cir. 1997) (concluding that coercive police tactics were absent where there was no such conduct by officer).

In *Brown*, the Fifth Circuit made a determination that consent was valid.  567 F. App'x at 280.  There, the driver was stopped for a traffic violation.  *Id.* at 274.  After requesting a computer check of the driver's license, the officer twice asked the driver for consent to search the vehicle.  *Id.*  Both requests were refused.  *Id.*  The officer continued to question the driver and then asked to search the car a third time after additional officers arrived on the scene.  *Id.* The driver eventually agreed to the search, which revealed the presence of drugs.  *Id.*  The Fifth Circuit noted that, although the driver was not free to leave, no "threats, force, or intimidation were used to obtain [] consent," he was cooperative, and he was aware of the right to refuse consent as he had declined it twice.  *Id.* at 280.  These factors supported a finding of voluntariness.  *Id.*

Like in *Brown*, Jamison alleges that Officer McLendon repeatedly asked for consent to search the vehicle.[58]   But the *Brown* Court did not find that repeated requests for consent constituted coercion, and neither should this Court.  What's more is that several other factors favor a finding of voluntariness.  Jamison was cooperative throughout the traffic stop, and he was aware of the right to refuse consent, as he admitted to refusing a breathalyzer on two prior occasions.[59]   His alleged denial of Officer McLendon's initial request for consent provides further evidence that Jamison was aware of the right to refuse.  As a high school graduate with some college education there is no indication that Jamison lacked understanding.[60]   Plus, Jamison knew with certainty that the search would not reveal incriminating evidence.[61]   Given

---

[58] Officer McLendon vehemently denies this allegation.  McLendon's Depo. at 46, Ex. C.

[59] Jamison's Depo. at 64, Ex. D.

[60] *Id.* at 25.

[61] *Id.* at 64.

the totality of the circumstances, the consent was voluntary. *See Shabazz*, 993 F.2d at 438 (explaining that "no single factor is dispositive.").

**Qualified Immunity.** At a minimum, it cannot be said that – under "clearly established law" – Officer McLendon acted unconstitutionally. "Qualified immunity is a <u>powerful</u> defense that protects 'all but the plainly incompetent or those who knowingly violate the law.'" *See Jordan v. Brumfield*, 687 Fed. App'x 408, 412 (5th Cir. 2017) (quoted cases omitted) (emphasis added). "[F]or a [law] to be clearly established, 'existing precedent must have placed the . . . constitutional question beyond debate.'" *See Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017) (quoted cases omitted) (brackets in original). "This is done only when [courts] can 'identify a case where an officer acting under similar circumstances . . . was held to have violated the [Constitution].'" *Id.* (quoted case omitted) (ellipsis in original).

Jamison will not be able to point to any authority that places the constitutional questions at issue in this case – whether there was reasonable suspicion for Officer McLendon's stop and whether Jamison's consent was voluntary – beyond debate. With respect to the first question, the Fifth Circuit has held that "[a]ny analysis of reasonable suspicion is necessarily fact-specific[.]" *See, e.g., United States v. Ibarra–Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999) (footnote and citations omitted). With respect to the second, courts similarly have recognized that "voluntariness is an issue particularly subject to qualified immunity." *Jordan v. Garrison*, 2014 WL 1379157, *12 (W.D. La. 2014).[62] This Court may grant Officer McLendon qualified immunity without even reaching the underlying constitutional questions. *See Pearson v. Callahan*, 555 U.S. 223, 227 (2009) (holding that courts may skip straight to the question of

---

[62] *See also Rogers v. City of Winnsboro, Texas*, 2016 WL 8730189, *5 (E.D. Tex. 2016) ("[E]ven if [the law enforcement officers] reasonably—albeit mistakenly—believed that Rogers's consent was valid, then they are protected by qualified immunity.").

whether an individual defendant violated clearly established rights, without first addressing whether the conduct at issue was constitutional).[63]

**Municipal Policy.**   There is no municipal policy or custom for which the Town of Pelahatchie could be held liable.  To establish municipal liability under Section 1983, proof of the following elements are required: "(1) a policymaker; (2) an official policy; and (3) violation of constitutional rights whose moving force is the policy or custom."   *Hampton Co. Nat'l Sur., LLC v. Tunica Cnty.*, 543 F.3d 221, 227 (5th Cir. 2008).  No such proof exists on these facts.

At his deposition, when asked why he sued the Town of Pelahatchie, Jamison responded that the only reason was because he thought that Officer McLendon was employed there.[64]  Such a reason cannot serve as a basis for liability because it is well settled that municipalities cannot be held vicariously liable under Section 1983 for the acts of employees.  *See Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003) (citation omitted) ("Section 1983 does not create vicarious or respondeat superior liability.").  Plus, as a factual matter, Officer McLendon is an employee of Richland.[65]

---

[63] With respect to the search, there is an additional avenue for qualified immunity besides consent: arguable probable cause.  Officer McLendon is entitled to qualified immunity so long as "a reasonable officer could have believed . . . [his] warrantless search to be lawful, in light of clearly established law and the information the searching officer possessed."  *See Payne v. Olive Branch*, 130 Fed. App'x 656, 662 (5th Cir. 2005) (emphasis in original) (quoted case omitted); *see also Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) ("[T]o be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause, but only 'arguable probable cause'" -- that is, "the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed.").  A reasonable officer could have believed that there was probable cause to search the vehicle based on these facts: (1) that Jamison was driving from a known drug location on the West Coast (Phoenix, Arizona), (2) that Jamison was driving down a known drug route (Interstate 20), (3) that Jamison was driving a car that had been purchased on the East Coast 13 days prior, (4) that Jamison had a South Carolina Driver's License, and (5) that the vehicle Jamison was driving had a temporary tag from Pennsylvania.

[64] Jamison Depo. at 44, Ex. D.

[65] McLendon CV, Ex. B.

Officer McLendon, at the time of his interaction with Jamison, was certified by the State of Mississippi and had years of experience as police officers.[66]  *See O'Neal v. City of San Antonio*, 344 Fed. App'x 885, 888 (5th Cir. 2009) ("This court has held that if the training of police officers meets state standards, there can be no cause of action for a failure to train absent a showing that 'this legal minimum of training was inadequate to enable [the officers] to deal with the 'usual and recurring situations' faced by jailers and peace officers.'"); *Burton v. City of Senatobia*, 2008 WL 619301, *11 (N.D. Miss. 2008) (holding plaintiff did not establish a municipal policy based on failure to train under nearly identical facts).  Jamison's attempt to hold Pelahatchie liable fails.

## CONCLUSION

This case offers several paths of dismissal.  Most straightforward, Jamison cannot overcome Officer McLendon's entitlement to qualified immunity or demonstrate an unconstitutional policy or custom with respect to the Town of Pelahatchie.  Jamison alternatively cannot demonstrate a constitutional violation.  Summary judgment is warranted.

Dated: December 1, 2017.

Respectfully submitted,

**PHELPS DUNBAR, LLP**

BY:   /s/ G. Todd Butler
Gary E. Friedman, MB #5532
Gregory Todd Butler, MS Bar #102907
4270 I-55 North
Jackson, Mississippi 39211-6391
Post Office Box 16114
Jackson, Mississippi  39236-6114
Telephone: 601-352-2300
Telecopier: 601-360-9777
Email:  friedmag@phelps.com

---

[66] McLendon Law Enforcement Certification, Ex. I; McLendon CV, Ex. B.

butlert@phelps.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I, Todd Butler, certify that I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to the following counsel of record:

Victor I. Fleitas, P.A.
452 North Spring St.
Tupelo, MS 38804
 (662) 840-0270
fleitasv@bellsouth.net

**_ATTORNEY FOR PLAINTIFF_**

Dated: December 1, 2017.

_/s/ G. Todd Butler_
G. TODD BUTLER