**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**CLARENCE JAMISON**                                                                 **PLAINTIFFS**

**VS.**                                      **CIVIL ACTION NO.: 3:16-cv-00595-CWR-LRA**

**TOWN OF PELAHATCHIE ET AL.**                                           **DEFENDANTS**

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT**

After Defendants Nick McLendon and the Town of Pelahatchie filed their summary judgment motion, Plaintiff Clarence Jamison stipulated to the dismissal of the Town of Pelahatchie from this case.  Doc. Nos. 48 & 50.  That leaves only Fourth Amendment and Equal Protection claims against Officer McLendon in his individual capacity, which Jamison brings under 42 U.S.C. § 1983.  *See* Doc. No. 54 *generally*.  Because Officer McLendon is at a minimum entitled to qualified immunity, a final judgment should be entered in his favor. Jamison's oppositional response does nothing to undercut Officer McLendon's request for summary judgment.

**REBUTTAL ARGUMENT**

**I.      Jamison cannot demonstrate an Equal Protection violation.**

Officer McLendon's opening brief highlighted the evidentiary standard that applies to Equal Protection claims in the traffic-stop context.  *See* Doc. No. 47 at pp.6-7.  In particular, Officer McLendon cited to *Whren v. United States*, 517 U.S. 806, 813 (1996), which explains that targeting racial minorities for enforcement of traffic laws can run afoul of the Fourteenth Amendment.  *See also United States v. Lopez*, 817 F.Supp.2d 918, 927 n.58 (S.D. Miss. 2011) (Reeves, J.).  Jamison's oppositional response does not survive *Whren*'s requirements, namely,

that Officer McLendon's actions had a discriminatory effect and were motivated by a discriminatory purpose. *See, e.g., Gilkey v. Livingston*, 2007 WL 1953456, *4 (N.D. Tex. 2007).

The starting point is that Jamison completely ignores discriminatory effect. *See* Doc. No. 54 at pp. 26-28. His oppositional response discusses only discriminatory intent, which alone is insufficient even if he could prove it. *See Gilkey*, 2007 WL 1953456 at *4. Equal Protection claims require satisfaction of both requirements, and Jamison does not have sufficient evidence of either. *Compare id. with* Doc. No. 54 at pp.26-28.

With respect to the first requirement, Jamison has not produced any evidence of discriminatory effect. *See* Doc. No. 27 at pp.26-28. The discriminatory effect inquiry requires proof that the plaintiff was treated differently from other similarly situated persons of a different race. *See, e.g., Pinedo v. City of Dallas, Tex.*, 2015 WL 221085, *9 (N.D. Tex. 2015) (citing *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004)). Jamison conducted no discovery on the issue of how Officer McLendon conducts stops of white drivers, and he certainly has not identified a white driver that he believes was treated more favorably under "nearly identical circumstances." *See, e.g., Ray v. GEO Group, Inc.*, 2013 WL 870105, *5 (S.D. Miss. 2013) (Reeves, J.) (granting summary judgment on race discrimination claim because plaintiff "ha[d] pointed to no similarly situated individuals or incidents"). Nor has Jamison pointed to any statistical data in support of his claim. *See, e.g., Starr v. Oklahoma*, 2007 WL 2874826, *4 (N.D. Okl. 2007) (explaining that, in addition to comparator evidence, a plaintiff might offer statistical evidence proving "that members of a protected racial group receive less favorable treatment than nonmembers"). Jamison has not satisfied -- or even attempted to satisfy -- the requirement of discriminatory effect.

With respect to the second requirement, Jamison similarly has not produced sufficient evidence of discriminatory motive. He makes two claims in support of his position -- that

Officer McLendon was aware of his race prior to pulling him over and that Officer McLendon had a pretextual reason for stopping him -- but neither claim carries Jamison where he wants to go. *See* Doc. No. 54 at pp. 26-28.

It is unbelievable that Officer McLendon and Jamison made eye contact while Jamison was traveling 60 miles-per-hour down the interstate,[1] *see* Jamison Depo. at 51, Ex. J, but such an allegation is legally immaterial in any event.   Discriminatory intent cannot be inferred from "[t]he mere fact that [a] plaintiff and [a] defendant[ ] are of different races[.]"  *See, e.g., Johnson v. City of N.Y.*, 669 F.Supp.2d 444, 450 (S.D. N.Y. 2009).   Any contrary conclusion would, as one court put it, "blindly ascribe to race all personal conflicts between individuals of different races[,]" causing "a 'litigious cauldron of racial suspicion.'"  *See Cheatam v. Blanda*, 2010 WL 2209217, *5 (E.D. Tex. 2010) (quoted case omitted).   The law is not inherently skeptical of all law enforcement interactions.

Nor is it enough that Jamison wages allegations of pretext.   Officer McLendon testified, and Jamison does not dispute, that Officer McLendon's LPR system did not recognize Jamison's temporary tag.   *See* McLendon Depo. at 27, Ex. C; Jamison Depo. at 80, Ex. J.   Officer McLendon further testified that, once behind Jamison, he could not read Jamison's tag.   *See* McLendon Depo. at 27-28.  Jamison theorizes that Officer McLendon should have been able to read his tag, but such self-serving testimony has long been rejected by courts in this context. *See, e.g., Washington v. Vogel*, 880 F.Supp. 1542, 1544 (M.D. Fla. 2005) (explaining that "[t]he mere denial by the driver or occupants of a vehicle that the driver committed a traffic violation is insufficient, without more, for a reasonable jury to find that [a] traffic stop was pretextual[.]"). Jamison, who was driving his vehicle at a speed of 60 m.p.h. and therefore not in a position to

---

[1] This allegation by Jamison brings into play the rule that, at the summary judgment stage, courts are not required to credit a version of the facts that is too incredible to be believed. *See, e.g., Chenari v. George Washington U.*, 847 F.3d 740, 747 (D.C. Cir. 2017) (discussing parameters of the rule).

observe his own tag going down the Interstate, can do nothing more than speculate about Officer McLendon's perception of his tag. *See, e.g., Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) (citation omitted) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

Even if Jamison could demonstrate pretext, however, that alone would not satisfy the second requirement. Jamison must show that the stop was racially motivated, not just that Officer McLendon did not really pull him over because of the readability of his tag, i.e. pretext. *See Whren*, 517 U.S. at 813 (explaining that the Equal Protection Clause forbids race-based stops); *cf. Reynolds v. Sovran Acquisitions, L.P.*, 2015 WL 6501552, *11 (N.D. Tex. 2015) (granting summary judgment where plaintiff demonstrated pretext but failed to produce evidence of discrimination). Jamison's Equal Protection claim is severely undercut by his Fourth Amendment argument, which alleges that Officer McLendon believed he had the right to stop Jamison simply because of his temporary tag. *See* Doc. No. 54 at p.21. If Officer McLendon stopped Jamison merely because he had a temporary tag, such action would not constitute discrimination on the basis of race.[2] *See Mitchell v. Township of Willingboro Municipality Government*, 2011 WL 3203677, *5 (D. N.J. 2011) (explaining that there was no evidence that the "particular improper stop was a result of racial targeting instead of, say, the tinted windows or out-of-state plates on the car"). Countless cases within this Circuit underscore that Jamison's conclusory allegations are insufficient to satisfy the discriminatory purpose requirement. *See Lawson v. Martinez*, 2015 WL 1966069, *4 (W.D. Tex. 2015); *Garcia v. Dallas Police Dept.*, 2013 WL 5433502, *8 (N.D. Tex. 2013); *Paris v. Dallas Police Dept.*, 2012 WL 2520779, *5-6

---

[2] Tellingly, Jamison's very response confesses that "there is no dispute that the sole reason [Officer] McLendon stopped Mr. Jamison, in the first place, had to do with his temporary tag[.]" *See* Doc. No. 54 at p.17 (emphasis added).

(N.D. Tex. 2012); *Grant v. Acevado*, 2008 WL 1924241, *2-3 (W.D. Tex. 2008); *Longmire v. Starr*, 2005 WL 2990908, *3 (N.D. Tex. 2005).

This Court should dismiss the Equal Protection claim.  Jamison has the burden of proving both discriminatory effect and discriminatory purpose.  Because he can prove neither, summary judgment is appropriate.

## II.    Even if Jamison could demonstrate an Equal Protection violation, Officer McLendon is entitled to qualified immunity.

In addition to proving a constitutional violation, Jamison must overcome the qualified immunity doctrine.  When, as here, the defendant has asserted qualified immunity, the plaintiff shoulders the burden of proving that the defendant's conduct violated "clearly established law." *See Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. Nov. 13, 2017) (en banc).  The Supreme Court's most recent discussion of qualified immunity came in *District of Columbia v. Wesby*, No. 15-1485, slip op. at 13 (Jan. 22, 2018), and it stresses that qualified immunity presents a "demanding standard" that is difficult for plaintiffs to overcome.  Jamison has not come close to satisfying his burden in this case.

To be sure, Jamison has pointed to no clearly established law on the discriminatory effect or discriminatory purpose requirements of his Equal Protection claim.  *See* Doc. No. 54 at pp. 26-28.  In fact, both cases he cites in his oppositional response are employment cases, not law enforcement cases.  *Id.* (citing *Wallace v. Tex. Tech U.*, 80 F.3d 1042 (5th Cir. 1996) and *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305 (5th Cir. 2004)).  Jamison's failure to identify a case where a law enforcement officer has been held to have committed a constitutional violation under similar circumstances provides an alternative ground for dismissal of the Equal Protection Clause claim.  *See White v. Pauly*, 137 S.Ct. 548, 552 (Jan. 9, 2017) (reversing a denial of qualified immunity where the plaintiff "failed to identify a case where an officer acting under

similar circumstances . . . was held to have violated the [Constitution]"); *see also Wesby*, No. 15-1485, slip op. at 15 ("[W]e have stressed the need to 'identify a case where an officer acting under similar circumstances . . . was held to have violated the [Constitution, for]' only in "the rare 'obvious case'" may a plaintiff avoid pointing to a specific case that supposedly clearly establishes the law.).

### III.    Jamison cannot demonstrate a Fourth Amendment violation.

Summary judgment likewise is appropriate on Jamison's Fourth Amendment claims. He challenges both Officer McLendon's initial stop and subsequent search, but both were constitutionally reasonable. *See Florida v. Jimeno*, 500 U.S. 248, 250 (1991) ("The touchstone of the Fourth Amendment is reasonableness."). Flaws in Jamison's position are addressed in turn.

**Officer McLendon's Stop.**   As an initial matter, all of Jamison's discussion about Officer McLendon's motive and intent is irrelevant. *See* Doc. No. 54 *generally*. Unlike with the Equal Protection claim, "the constitutional reasonableness of traffic stops under the Fourth Amendment does not depend on the actual motivations of the individual officers involved." *See Morrow v. Washington*, 277 F.R.D. 172, 198 (E.D. Tex. 2011) (citing *Wren*, 517 U.S. at 812-13)). Jamison quotes Officer McLendon's testimony at length about the reason he decided to stop Jamison, but this Court must ignore such purported evidence. *Id.* All that matters is whether there was reasonable suspicion from an <u>objective</u> standpoint. *See U.S. v. Lopez-Moreno*, 420 F.3d 420, 432 (5th Cir. 2005) ("Supreme Court and Fifth Circuit precedent has made clear that an officer's subjective intentions have no impact on analyzing reasonable suspicion[.]").

The undisputed facts are that Jamison was driving a car with a temporary tag that Officer McLendon's LPR system did not recognize.   Jamison attempts to create a fact issue by challenging Officer McLendon's assertion that he stopped the car, in part, because he was unable

to read the temporary tag due to it flapping in the wind.  In doing so, Jamison points to an exhibit

of the tag—produced more than three years after the incident—as evidence that the tag could not

have been curled or flapping at the time of the stop because it does not have a crease in it now.

*See* Docket No. 54 at p.3.  The probative value of such evidence obviously is lacking due the

possibility that the tag could have been manipulated throughout the years and is, therefore, not an

accurate reflection of its appearance at the time of the stop.  *See, e.g., U.S. v. Barragan-Espino*,

2008 WL 4661627, \*4 (W.D. La. 2008) (explaining that the defendant's photographs of the tag,

taken after the fact, "do not depict what [the officer] saw under the circumstances at the time that

he saw it," which was "at night while traveling 60-70 m.p.h.").

Regardless, though, there is no need to consider the issue about the flapping tag because

Officer McLendon's reasonable belief, even if mistaken, that Jamison's temporary tag was

invalid under Mississippi law was enough to establish reasonable suspicion justifying the

investigatory stop.[3]  *See* McLendon Depo. at 37, Ex. K; McLendon Depo. at 38, Ex. C.  The

Supreme Court unequivocally has held that reasonable suspicion may be based on a reasonable

mistake of law.  *See Heien v. North Carolina*, 135 S.Ct. 530, 540 (2014).  In determining

whether the officer's mistake was objectively reasonable, the *Heien* Court assessed whether the

law at issue was ambiguous and whether courts had addressed the ambiguity.  *See id.* at 535; *see*

*also, U.S. v. Alvarado-Zarza*, 782 F.3d 246, 250 (5th Cir. 2015).

Mississippi Code § 27-19-40(2) governs the validity of temporary tags.  It states that such

tags are "valid for a period of seven (7) full working days . . . after the date the motor vehicle is

purchased."  *Id.*  The statute, however, only speaks to temporary tags issued in Mississippi.  It is

---

[3] The reasoning from *Wesby* makes clear that, if it was reasonable for Officer McLendon to believe that he could stop Jamison simply because of the temporary tag, then the issue about whether the tag was flapping is wholly irrelevant.  *See* No. 15-1485, slip op. at 14 n.2 ("Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for <u>any</u> offense, not just the offense cited at the time of arrest or booking.").

silent regarding the validity of temporary <u>out-of-state</u> tags.  In light of this silence, Mississippi case law acknowledges that "a Mississippi [law enforcement officer cannot] be charged with perfect knowledge of other states' conventions regarding temporary tags." *See Twenty Thousand Eight Hundred Dollars ($20,800.00) in U.S. Currency v. State ex rel. Miss. Bureau of Narcotics*, 115 So.3d 137, 140 (Miss. Ct. App. 2013).  Officer McLendon's belief that Jamison's temporary out-of-state tag was invalid, even if mistaken, was therefore objectively reasonable.

Jamison's oppositional response wrongly suggests that, for Officer McLendon's stop to have been permissible, Jamison actually had to be in violation of Mississippi's traffic laws. Aside from the fact that his argument is in clear contradiction to *Heien*,[4] reasonable suspicion merely requires the possibility that there <u>might</u> be criminal activity afoot.  *See United States v. Brigham*, 382 F.3d 500, 509 (5th Cir. 2004); *see also United States v. Pack*, 622 F.3d 383 (5th Cir. 2010).   The Supreme Court has been adamant that "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct."  *See United States v. Arvizu*, 534 U.S. 266, 277 (2002).   "The law requires far less than perfect certainty of a traffic violation before an officer may initiate a stop."  *United States v. Garcia-Patino*, 2018 WL 306729, *3 (D. Kan. 2018); *see also United States v. Montes–Hernandez*, 350 Fed. App'x 862, 867-68 (5th Cir. 2009) ("To have an objectively reasonable suspicion, an officer does not have to determine that a suspect has in fact violated the law.").

Ultimately, the undisputed fact that Officer McLendon's stop was premised on Jamison driving a car with a temporary tag from Pennsylvania that his LPR system did not detect is dispositive.  *See* Doc. No. 54 at p.16 (stating that "there is no dispute that the sole reason [Officer] McLendon stopped Mr. Jamison [ ] had to do with his temporary tag").   Officer

---

[4] Tellingly, the Fifth Circuit cases Jamison cites on this point were decided <u>before</u> *Heien*.  *See United States v. Miller*, 146 F.3d 274, 278-79 (5th Cir. 1998); *United States v. Lopez-Valdez*, 178 F.3d 282, 288(5th Cir. 1999).

McLendon was justified in stopping Jamison and investigating whether he was committing a crime.  *See, e.g., United States v. Smith*, 164 Fed. Appx. 825, 826-27 (11th Cir. 2006) (finding traffic stop supported by reasonable suspicion where officer stopped vehicle after observing "the vehicle had a 'paper car lot tag'" and wanted to "confirm the validity of the paper tag").  The actions at issue here satisfy the "low threshold" that is reasonable suspicion.  *See, e.g., Windham v. Harris County, Tex.*, 875 F.3d 229, 240 (5th Cir. 2017).[5]

**Officer McLendon's Search.**  Officer McLendon's actions following the stop also were consistent with the Constitution.  Jamison argues that Officer McLendon unlawfully prolonged the stop and then conducted an unlawful search, but Jamison's position is without merit.

Once Officer McLendon pulled Jamison over, it was permissible for him to engage in "ordinary inquiries incident to [the] traffic stop."  *See Illinois v. Caballes*, 543 U.S. 405, 408 (2005).  Such ordinary inquiries included "checking [Jamison's] driver's license, determining whether there [were] outstanding warrants against [Jamison], and inspecting [Jamison's] automobile's registration and proof of insurance."  *See Rodriguez v. United States*, 135 S.Ct. 1609, 1611 (2015).  It also was permissible for Officer McLendon to question Jamison about other things, such as where he was traveling from.  *See Brigham*, 382 F.3d at 508 ("An officer may also ask about the purpose and itinerary of a driver's trip during the traffic stop.").

Governing law simply does not support Jamison's prolonged-stop argument.  *Rodriguez* makes clear that checking for "outstanding warrants" constitutes a permissible traffic stop inquiry, so Officer McLendon had every right to detain Jamison until he received the requested information back from the dispatcher.  *See* 135 S.Ct. at 1611.  Plus, in this case, Officer McLendon's initial inquiries revealed various important things: (1) that Jamison was driving

---

[5] By comparison, the Supreme Court said in *Wesby* that "[p]robable cause 'is not a high bar.'"  *See* No. 15-1485, slip op. at 7.  We of course know that reasonable suspicion presents "a much lower standard" than probable cause.  *See, e.g., United States v. Johnson*, 655 Fed. App'x 247, 249 (5th Cir. 2016).

from a known drug location on the West Coast (Phoenix, Arizona), (2) that Jamison was driving down a known drug route (Interstate 20), (3) that Jamison was driving a car that had been purchased on the East Coast 13 days prior, (4) that Jamison had a South Carolina Driver's License, and (5) that the vehicle Jamison was driving had a temporary tag from Pennsylvania. *See* Doc. No. 47 at pp.6-7 (collecting record citations).  Reasonable suspicion is an evolving concept, meaning that information Officer McLendon learned after the stop's inception provided further justification for extending the scope of the stop.  *See, e.g., United States v. Pauyo*, 341 Fed. App'x 955 (5th Cir. 2009) (holding that law enforcement officer's "actions were justified as a graduated response to emerging facts").

Jamison tries to discount these facts by arguing that they could be suggestive of completely innocent conduct.  *See* Doc. No. 54 at p.24.  While that certainly may be true, reasonable suspicion is not so demanding.  Supreme Court precedent is clear that "the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of non-criminal acts."  *See United States v. Sokolow*, 490 U.S. 1, 10 (1989) (quoted case omitted).  Courts consistently apply this rule without fail.  *See, e.g, United States v. Bernal*, 2017 WL 5662299, *6 (E.D. Ky. 2017) (explaining that, although facts standing alone were suggestive of completely innocent conduct, together they "pass[ed] the relatively low reasonable suspicion threshold").  The Fifth Circuit, for example, recently reiterated that "[f]actors that ordinarily constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced[6] officers."  *See United States v. Rivera-*

---

6 As explained in the opening brief, Officer McLendon certainly is an "experienced" law enforcement officer, having "self-initiated over 103 criminal interdiction cases involving bulk smuggling of contraband[,]" having "assisted in over 100 criminal interdiction cases[,] having worked to "disrupt[ ] [ ] several Drug Trafficking Organizations[,]" and having been "recognized as an expert witness in the fields of Criminal Interdiction and Drug Trafficking [by] the States of Mississippi and Louisiana." *See* Doc. No. 47 at pp.1-2 (collection record citations).

*Alonso*, 690 Fed. App'x 273, 274 (5th Cir. 2017) (quoting *United States v. Jacquinot*, 258 F.3d 423, 427-28 (5th Cir. 2001)).[7]

Jamison has not demonstrated that the length of time he was stopped prior to providing consent was unreasonable, for "[t]here is . . . no constitutional stopwatch on traffic stops." *See Bringham*, 382 F.3d at 511. Underscoring the point is a case decided approximately three months ago, where the Fifth Circuit held that a 90-minute traffic stop was consistent with the Constitution. *See Windham*, 875 F.3d 229 at 241. Jamison has not pointed to any evidence that Officer McLendon's pre-consent stop lasted anywhere near 90 minutes. *See, e.g., RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010) (explaining that "the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."). His argument about a prolonged detention must be rejected.

Having shown that the duration of the stop, pre-consent, was lawful, the inquiry then turns to Officer McLendon's search. This is so because a law enforcement officer needs no justification to prolong the encounter once consent is provided. *See U.S. v. Machuca-Barrera*, 261 F.3d 425, 435 (5th Cir. 2001). Jamison admits that he provided consent, but wrongly maintains that his consent was involuntary. *See* Doc. No. 54 at pp.24-26.

To be sure, Jamison has not demonstrated that the six factors used to determine whether consent was voluntary weigh in his favor. Those factors are "(1) the voluntariness of the suspect's custodial status; (2) the presence of coercive police procedures; (3) the nature and extent of the suspect's cooperation; (4) the suspect's awareness of his right to refuse consent; (5) the suspect's education and intelligence; and (6) the suspect's belief that no incriminating

---

[7] *Wesby* likewise goes into great detail about such an "innocent facts" argument. *See* No. 15-1485, slip op. at 11-12. The Supreme Court chided the D.C. Circuit for "mistakenly believ[ing] that it could dismiss outright any circumstances that were 'susceptible of innocent explanation.'" *Id.* The "relevant inquiry[,]" the Court said, "is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Id.* (quoted case omitted).

evidence will be found." *See United States v. Escamilla*, 852 F.3d 474, 483 (5th Cir. 2017).[8]  It is undisputed that the last two factors support a finding of voluntariness.  *See* Doc No. 54 at 25-26 (admitting that Jamison is intelligent and "knew to a certainty that no drugs would be found"); *United States v. Beltran*, 650 F. App'x 206, 207 (affirming district court's finding that appellant's intelligence and belief that drugs would not be discovered weighed in favor of voluntariness).  The remaining factors are discussed in turn.

The fact that Jamison was not free to leave prior to giving consent does not hold significant weight, as this was only because Officer McLendon was waiting for a return on his license check.  *See U.S. v. Padilla*, 2011 WL 2110305, at *6 (S.D. Miss. May 25, 2011) ("The Fifth Circuit has repeatedly held that a roadside stop based on reasonable suspicion may continue until all computer checks come back clear.") (collecting cases); *U.S. v. Huerta*, 252 F. Appx 694, 697 (5th Cir. 2007) (concluding that consent was voluntary where defendant was "not free to leave while the license check was being conducted").  For this same reason, Jamison's assertion that Officer McLendon placed his arm in the car to prevent him from leaving does not constitute coercion.  Even though Jamison vaguely alleges that his exchange with Officer McLendon became heated, he admits to being cooperative throughout the encounter.  Docket No. 54 at 25. Jamison also concedes that he was aware of his right to refuse consent.  *Id.*[9]  The insistence that

---

8 Officer McLendon has explained why his stop was lawful, but, even if it was not, the lawfulness of the stop is not dispositive of the search inquiry.  Where consent follows an unlawful detention, courts must consider three additional factors to determine whether it was an act of free will: "(1) [t]he temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct."  *U.S. v. Johnson*, 264 F.3d 1140, at *2 (5th Cir. 2001).  When coercive police tactics are absent and the person is aware of his right to refuse consent, "these factors constitute intervening circumstances sufficient to purge the taint of an unreasonable detention."  *Id.* Thus, even if the Court were to find that the initial stop was unlawful, these factors, discussed in more detail later, demonstrate that Jamison's consent was still valid.

9 Jamison's assertion that the opening brief referenced his prior license suspensions for refusal to use a breathalyzer in an attempt to make him look bad is unfounded.  The evidence was pointed out to show Jamison's awareness of his right to refuse consent.  The Fifth Circuit considers such evidence of prior refusals relevant to determining whether consent was voluntary.  *See United States v. Beltran*, 650 F.

Officer McLendon asked Jamison to consent multiple times after declining does not militate against a finding of voluntariness.  In fact, it reinforces a determination that consent was freely given.  *See United States v. Brown*, 567 F. App'x 272, 280 (5th Cir. 2014) (concluding that consent was voluntary, in part, because defendant had twice declined the officer's request for consent, evidencing awareness of his right to refuse).  The balance of these factors establishes that Jamison voluntarily consented to the search of his car.

As a final resort, Jamison alleges that he attempted to withdraw consent during the search, and Officer McLendon told him that consent cannot be withdrawn once given.  *See* Doc. No. 54 at 10.[10]   For withdrawal of consent to be effective, however, there must be "an unequivocal act or statement of withdrawal."  *U.S. v. Alfaro*, 935 F.2d 64, 67 (5th Cir. 1991); *see also United States v. Mata*, 517 F.3d 279, 291 (5th Cir. 2008) (holding defendant did not effectively withdraw consent by saying "Maybe I should speak with my lawyer"); *United States v. $304,980.00 in U.S.Currency*, 732 F.3d 812, 820 (7th Cir. 2013) (explaining that "withdrawal must be clearly communicated to the searching officers in order to be effective"); *United States v. Gray*, 369 F.3d 1024, 1026 (8th Cir. 2004) ("[I]ntent to withdraw consent must be made by unequivocal act or statement."); *United States v. Kubbo*, 17 F. App'x 543, 545 (9th Cir. 2001) ("Mere reluctance to a continued search, once an explicit and unambiguous statement of consent has been provided, is not necessarily sufficient to imply a withdrawal [of] such consent.").

Jamison points to following deposition testimony as evidence that he withdrew consent:

---

App'x at 207 (using testimony that defendant "had declined consent to search his person during a prior arrest" to find that defendant was aware of his right to refuse consent.  The prior license suspensions are also relevant because they provide an explanation as to the length of time with regard to the computer check and why Officer McLendon initially thought Jamison's license was suspended.

[10] Tellingly, Jamison discusses this issue only in his fact section and not in his argument section.  Courts frequently hold that arguments are waived where a litigant makes only a passing reference in support of a claim.  *See, e.g., United States v. Thames*, 214 F.3d 608, 611 n. 3 (5th Cir. 2000).  Such a rule is especially appropriate when, as here, the defendant is protected by the doctrine of qualified immunity.

> A.      All right.  He told me to go back to his patrol car in front and then he was searching a little bit.  Then he came back around and he got something out of his car.  It was a lot of back and forth out of his car and my car.
>
> Q.      Uh-huh.
>
> A.      And I said, We didn't agree -- I said, I didn't agree to this.  Then he was like, You gave me consent.  That's all I need.
>
> Q.      Okay.  What was your response to that?
>
> A.      And I said that's what I didn't say.  I said, I didn't say that.
>
> Q.      What did he say then?
>
> A.      He went on because we was like -- it was getting heated then.

*See* Doc. No. 53-2 at p.70:5-20.  This testimony falls far short of an unequivocal statement of withdrawal.  Jamison never told Officer McLendon to stop the search.  He merely expressed some reluctance towards its continuation, which does not constitute an effective withdrawal.  *See $304,980.00 in U.S. Currency*, 732 F.3d at 820 ("[P]olice officers do not act unreasonably by failing to halt their search every time a consenting suspect equivocates.").  Because he did not clearly communicate his intent to withdraw consent, Officer McLendon's continued search of the vehicle did not violate the Fourth Amendment.

* * * *

All of Jamison's Fourth Amendment arguments fail.  Officer McLendon's initial stop was valid and so were his actions thereafter.  Summary judgment should be granted for failure to prove a constitutional violation.

### IV.      Even if Jamison could demonstrate a Fourth Amendment violation, Officer McLendon is entitled to qualified immunity.

It is important, as an initial matter, to clarify precisely what is required for Jamison to defeat Officer McLendon's assertion of the "powerful defense" of qualified immunity.  *See Jordan v. Brumfield*, 687 Fed. App'x 408, 412 (5th Cir. 2017).  It is not enough that he identify genuine factual disputes between the parties.  *See, e.g., Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015).  Instead, he must demonstrate that the factual disputes he can identify are "material," meaning that he would prevail under "clearly established law" if they were resolved in his favor.

*Id.*  The "clearly established law" component requires Jamison to show that Officer McLendon's "particularized" actions were constitutionally "beyond debate" on July 29, 2013  *See White*, 137 S.Ct. at 552; *see also Pena v. City of Rio Grande City*, 2018 WL 386661, *5 (5th Cir. Jan. 12, 2018) (explaining that the qualified immunity inquiry turns on whether the was "clearly established at the time of the incident").

Jamison's oppositional response includes a mere 1 and ½ pages on the issue of qualified immunity, making no attempt to tie Officer McLendon's specific actions to any particular legal precedents.  *See* Doc. No. 54 at pp.28-29.  This alone demonstrates that he has not satisfied his "heavy burden[.]"  *See, e.g., Lincoln v. Maketa*, 2018 WL 443394, *9 (10th Cir. Jan. 7, 2018) ("The assertion of qualified immunity imposes a heavy burden on the plaintiffs, requiring them to point to existing precedent or the clear weight of authority establishing the existence of a constitutional violation. None of the plaintiffs has met that burden.").  Because this Court may grant qualified immunity to Officer McLendon without tackling any of the underlying constitutional questions previously discussed, *see Pearson v. Callahan*, 555 U.S. 223, 227 (2009),[11] Officer McLendon highlights various points related to Jamison's Fourth Amendment claims.

First, there is no clearly established law demonstrating that what Officer McLendon observed did not amount to reasonable suspicion.  The Fifth Circuit has been adamant that the reasonable suspicion inquiry is precisely the type of issue for which qualified immunity is appropriate.  *See, e.g., Gonzalez v. Huerta*, 826 F.3d 854 (5th Cir. 2016).  Although the Fifth Circuit harbored "serious doubts" as to whether there was reasonable suspicion in *Gonzalez*, the

---

[11] Indeed, *Wesby* makes clear that, if a case can be resolved on the issue of qualified immunity, courts ordinarily should not address the underlying constitutional question: "We continue to stress that lower courts 'should think hard, and then think hard again,' before addressing both qualified immunity and the merits of an underlying constitutional claim."  *See* No. 15-1485, Slip op. at 13 n.7 (quoted case omitted).

court nonetheless held that the plaintiff could not overcome the "high level of specificity" required to defeat qualified immunity. *Id*. at 857-58. The same is true here, where Jamison's vehicle had a temporary tag from Pennsylvania that could not be read by Officer McLendon's LPR system. *See Wesby*, No. 15-1485, slip op. at 15 ("[W]e have stressed the need to 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.").[12]

Second, even under Jamison's theory that Officer McLendon wrongly believed that he could stop Jamison simply because of his temporary tag, Officer McLendon still is entitled to qualified immunity. Jamison grossly misstates the law by asserting "that an officer's mistake of law regarding the reason for initiating a traffic stop . . . violates the Fourth Amendment." *See* Doc. No. 54 at p.21. Quite differently, the law is settled that both reasonable mistakes of fact <u>and</u> reasonable mistakes of law are constitutionally permissible. *See Heien*, 135 S.Ct. at 539. Courts in other jurisdictions have applied the rule in the precise context presented here, explaining that an officer does not violate the Fourth Amendment by misinterpreting state law regarding temporary tags. *See, e.g., United States v. Figueroa-Rivera*, 2016 WL 9819518, *4 (D. New Mexico 2016) ("[E]ven if Armijo's traffic stop was exclusively based on his misapprehension of Colorado law regarding temporary tags, the mistake of law alone could provide a constitutional basis for the stop under *Heien*."). And the law is even more compelling in Mississippi where it has been explained that law enforcement officers cannot "be charged with

---

[12] The corollary is that it is not enough for a plaintiff to simply identify <u>any</u> case that outlaws the conduct at issue. *See, e.g., Vincent v. City of Sulphur*, 805 F.3d 543, 548-49 (5th Cir. 2015) (holding that "two out-of-circuit cases and a state-court intermediate appellate decision hardly constitute persuasive authority adequate to qualify as clearly established law sufficient to defeat qualified immunity in this circuit"). Rather, the plaintiff must point to controlling authority from the Supreme Court or Fifth Circuit or to a "robust consensus" of persuasive authority. *See, e.g., Morgan v. Swanson*, 659 F.3d 359, 382 (5th Cir. 2011).

perfect knowledge of other states' conventions regarding temporary tags." *See Twenty Thousand Eight Hundred Dollars ($20,800.00) in U.S. Currency*, 115 So.3d at 140.[13]

Third, there is no clearly established law demonstrating that the duration of the Officer McLendon's stop, prior to consent, violated the Fourth Amendment.  Officer McLendon was initially justified in stopping Jamison, and the law is settled that Officer McLendon did not unlawfully extend the duration of the valid stop by questioning Jamison while waiting for the license check to clear.[14]  *See U.S. v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993) ("Because the officers were still waiting for the computer check at the time that they received consent to search the car, the detention to that point continued to be supported by the facts that justified its initiation.").  Furthermore, Officer McLendon acquired additional information during the course of the stop after learning the following facts: (1) that Jamison was driving from a known drug location on the West Coast (Phoenix, Arizona), (2) that Jamison was driving down a known drug route (Interstate 20), (3) that Jamison was driving a car that had been purchased on the East Coast 13 days prior, (4) that Jamison had a South Carolina Driver's License, and (5) that the vehicle Jamison was driving had a temporary tag from Pennsylvania.  This information would have justified an extension of the stop even after license check returned.  *See U.S. v. Jenson*, 462 F.3d 399, 404 (5th Cir. 2006) ("[I]f additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled then the detention may continue until the new reasonable suspicion has been dispelled or confirmed.").  Jamison simply cannot

---

[13] Another recent case for consideration is *Turner v. Lieutenant Driver*, 848 F.3d 678 (5th Cir. 2017), where the Fifth Circuit considered whether citizens have a First Amendment right to video the police.  It ultimately was determined that such a right indeed exists, but qualified immunity nonetheless was awarded because, "a]t the time in question, neither the Supreme Court nor [the Fifth Circuit] had determined whether First Amendment protection extends to the recording or filming of police."  *See Turner*, 848 F.3d at 686.  Similarly here, Jamison has pointed to no Supreme Court or Fifth Circuit precedent holding that a law enforcement officer does not have reasonable suspicion to investigate out-of-state temporary tags.

[14] *See* Doc. No. 46-3 at p.20:12-17 (explaining that the question took place while waiting for the computer check results).

point to any clearly established law at the time of the stop showing that the duration of the stop was objectively unreasonable.[15]

Fourth, there is no clearly established law demonstrating that Jamison's consent was involuntary. Because it is not always obvious that consent was the result of coercion, "voluntariness is an issue particularly subject to qualified immunity." *Jordan v. Garrison*, 2014 WL 1379157, *12 (W.D. La. April 8, 2014). Moreover, consent has been deemed voluntary on worse facts than those before the Court. *See, e.g, U.S. v. Estrada*, 459 F.3d 627, 634 (5th Cir. 2006) (holding consent voluntary where there was evidence that defendant was uneducated and unaware of his right to refuse consent); *U.S. v. Olivarria*, 781 F. Supp.2d 387, 395 (N.D. Miss. 2011) (concluding that consent was voluntary even though it was given while suspect was handcuffed). Even to the extent that the issue could be deemed a "close question," close questions warrant qualified immunity. *See, e.g., Howell v. Town of Ball*, 827 F.3d 515, 525 (5th Cir. 2016).

Fifth, there is no clearly established law demonstrating that Jamison withdrew his admitted consent. Any withdrawal would have to have been "unequivocal," *see Alfaro*, 935 F.2d at 67, and Jamison has pointed to no case involving similar circumstances. Courts, again, correctly have acknowledged that consent issues are "particularly subject to qualified immunity." *See Jordan*, 2014 WL 1379157 at *12.

Finally, there is no clearly established law demonstrating that, even if Jamison's consent could be deemed involuntary, Officer McLendon lacked at least "arguable probable cause" to search Jamison's vehicle. Officer McLendon highlighted in his opening brief that, for purposes of qualified immunity, there need not have been <u>actual</u> probable cause even if Jamison had not

---

[15] Because the incident occurred in 2013, any limitations imposed by *Rodriguez v. U.S.*, 135 S. Ct. 1609 (2015) are irrelevant to the determination of whether Officer McLendon's actions were objectively unreasonable under clearly established law at the time.

consented.  *See* Doc. No. 47 at p.13 (collecting cases).  Instead, absent the consent, there needed

only be a basis for finding that a reasonable officer <u>might</u> believe that there was probable cause.

*Id*.  Jamison ignores this alternative argument entirely, and the undisputed facts show that there

was at a minimum arguable probable cause.  *See Wesby*, No. 15-1485, slip op. at 16 ("Even

assuming the officers lacked actual probable cause[,] the officers are entitled to qualified

immunity because they 'reasonably but mistakenly conclude[d] that probable cause [wa]s

present.'").

There ultimately are many reasons why Officer McLendon is entitled to qualified

immunity.  All of them sound in Jamison's failure to show specific material factual disputes that

are tied to specific precedents placing Officer McLendon's actions beyond legal debate.  Because

Jamison has not carried his burden, dismissal is appropriate.  The Supreme Court recently

emphasized that qualified immunity "is 'especially important in the Fourth Amendment

context.'"  *See Wesby*, No. 15-1485, Slip op. at 5.

<u>CONCLUSION</u>

For the reasons explained here and in the opening brief, Officer McLendon should be

granted summary judgment.

Dated: January 23, 2018.

Respectfully submitted,

**PHELPS DUNBAR, LLP**

BY:   */s/ G. Todd Butler*
          Gary E. Friedman, MB #5532
          Gregory Todd Butler, MS Bar #102907
          4270 I-55 North
          Jackson, Mississippi 39211-6391
          Post Office Box 16114
          Jackson, Mississippi  39236-6114
          Telephone: 601-352-2300

Telecopier: 601-360-9777
Email:  friedmag@phelps.com
    butlert@phelps.com

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I, Todd Butler, certify that I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to the following counsel of record:

Victor I. Fleitas, P.A.
452 North Spring St.
Tupelo, MS 38804
 (662) 840-0270
fleitasv@bellsouth.net

***ATTORNEY FOR PLAINTIFF***

Dated: January 23, 2018.

*/s/ G. Todd Butler*

G. TODD BUTLER