IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**CLARENCE JAMISON**                                                    **PLAINTIFFS**

**VS.**                                    **CIVIL ACTION NO.: 3:16-cv-00595-CWR-LRA**

**NICK MCLENDON, IN HIS INDIVIDUAL**
**CAPACITY**                                                         **DEFENDANTS**

**DEFENDANT'S MEMORANDUM IN SUPPORT OF**
**RENEWED MOTION FOR SUMMARY JUDGMENT**

On September 26, 2018, this Court granted summary in favor of Defendant Nick McLendon on Plaintiff Clarence Jamison's equal protection and *Terry* stop claims. *See* Doc. No. 62. What's left is Jamison's claims regarding the length of Officer McLendon's stop and Officer McLendon's search of Jamison's car. *Id.* at p.10. This Court asked for supplemental briefing on whether these claims were subject to qualified immunity, so Officer McLendon now files this renewed summary judgment motion in compliance.

The answer to this Court's question is "yes." Because Jamison can point to no "controlling authority" showing that the "specific" conduct at issue violated Jamison's "clearly established" Fourth Amendment rights, Officer McLendon is entitled to qualified immunity. Officer McLendon incorporates his prior summary judgment filings and supplements them as instructed. *See* Doc. Nos. 46, 47, 57, 58, & 62.

**SUPPLEMENTAL ARGUMENT & AUTHORITIES**

Unlike in the ordinary summary judgment context, it is not enough in the qualified immunity context for a court to hold that there are genuine issues of material fact. *See, e.g., Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir. 1998). Courts instead must determine whether the facts of the case, viewed in the light most favorable to the plaintiff, constitute a violation of the plaintiff's "clearly established" rights. *See Cantrell v. City of Murphy*, 666 F.3d 911, 919

(5th Cir. 2012). A district court's denial of qualified immunity on this question is subject to immediate appellate review because "qualified immunity 'is effectively lost if a case is erroneously permitted to go to trial[.]'" *See White v. Pauly*, 137 S.Ct. 548, 551-52 (2017) (quoted case omitted).[1]

Determining whether a plaintiff's "clearly established" rights were violated involves a two-step process.[2]

The first step is the nomination phase, illustrated by the Fifth Circuit's recent decision in *Vann v. Southaven*, 884 F.3d 307 (5th Cir. 2018). The panel initially reversed a grant of qualified immunity on a Fourth Amendment claim due to perceived factual disputes, but, after rehearing, the opinion was vacated. *See Vann*, 884 F.3d at 309. Unlike the original opinion, the revised opinion properly recognized that "[i]t is the plaintiff's burden to find a case in his favor[.]" *Id*. at 310. The plaintiff had "cited nary a pre-existing or precedential case . . . showing specific law on point[,]" so qualified immunity was reinstated. *Id*.

The second step, if a particular case has been identified, is to determine if the identified case qualifies as "clearly established law." This qualification determination involves inquiry into whether the identified case is both "authoritative" and "specific." *See District of Columbia v. Wesby*, 138 S.Ct. 577, 591-93 (2018). The Supreme Court reversed the D.C. Circuit in *Wesby* for "not follow[ing] this straightforward analysis." *Id*. at 591.

Qualified immunity, to be sure, "is a powerful defense" that "is 'especially important in the Fourth Amendment context.'" *See id*. at 590 (quoted case omitted); *Jordan v. Brumfield*, 687 Fed. App'x 408, 412 (5th Cir. 2017). The Fifth Circuit recently emphasized that, "[r]ight or

---

[1] Relatedly, courts must rule on the issue of qualified immunity before trial and may not carry the issue of qualified immunity along with the case. *See Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986).

[2] A recent Mississippi district court opinion discusses the two-step process in detail. *See Carr v. Hoover*, 2018 WL 3636563, *8-9 (N.D. Miss. 2018).

wrong, the very premise of qualified immunity is that not every constitutional violation suffered by [a] plaintiff[ ] is redressable." *See Samples v. Vadzemnieks*, 900 F.3d 655, 663 (5th Cir. 2018). Governing law requires that Officer McLendon be given qualified immunity in this case, regardless of whether there was a constitutional violation.

### A. The length of the stop leading up to Officer McLendon's search

This Court previously held that Officer McLendon could not be held liable for the initial stop of Jamison's car, so the question then becomes whether the length of the stop gives rise to liability. Doc. No. 62 at p.10. Although the order "assume[s] that Jamison's tag was entirely visible[,]" *id*. at p.9, that does not answer the question about the length of the stop. Case law makes clear that, even if Officer McLendon saw that the tag was in order upon stopping Jamison, Officer McLendon was authorized "to conduct 'ordinary inquiries incident to' a traffic stop[,] even if those inquiries [were] unrelated to the purpose the stop." *See Stewart v. Holder*, 2017 WL 4479612, *8 (E.D. Va. 2017) (collecting Supreme Court and Circuit precedent on the issue); *see also* Doc. No. 58 at pp.9-10 (collecting authority).

Jamison's summary judgment response details the "inquiries incident to the stop" that were made in this case, including Officer McLendon asking Jamison for his driver's license, registration, and proof of insurance; Officer McLendon calling dispatch to conduct a license check; and Officer McLendon requesting a NCIC check. *See* Doc. No. 54 at pp.2-5. It also is undisputed that Jamison told Officer McLendon that he was traveling from the West Coast. *See* Doc. No. 47 at p.3 (collecting both Jamison's and Officer McLendon's deposition testimony on this point). Case law again makes clear that each of these inquiries was constitutionally permissible. *See Rodriguez v. United States*, 135 S.Ct. 1609, 1611 (2015) (explaining that license, registration, and insurance checks were all permissible inquiries incident to a stop); *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004) (explaining that asking the driver

for the purpose and itinerary of his trip is a permissible inquiry incident to a stop); *Flora v. Southwest Iowa Narcotics Enforcement Task Force*, 292 F.Supp.3d 875, 890 (S.D. Iowa 2018) (explaining that a NCIC check is a permissible inquiry incident to a stop).

While the NCIC check was being conducted, Officer McLendon engaged Jamison in conversation at his car. *See* Doc. No. 54 at p.6. This conversation was undoubtedly lawful. *See, e.g., United States v. Spence*, 667 Fed. App'x 446, 447 (5th Cir. 2016) ("While waiting for the results of computer checks, the police can question the subjects of a traffic stop even on subjects unrelated to the purpose of the stop.").

Jamison says that Officer McLendon engaged him in conversation "for the purpose of finding a reason to search the car or get [ ] Jamison's consent to search the car[,]" *id*., but Officer McLendon's intent is entirely irrelevant. A police officer's subjective motivation plays no role in the Fourth Amendment analysis. *See, e.g., United States v. Toussaint*, 838 F.3d 503, 508 (5th Cir. 2016) (collecting cases). Courts instead must determine whether there is an "objectively reasonable basis" that supports the officer's actions.³ *Id*. at 508-09.

Significantly, the inquiries that had been conducted at the time Officer McLendon was awaiting the results of the NCIC check revealed the following: (1) that Jamison was driving from a known drug location on the West Coast (Phoenix, Arizona), (2) that Jamison was driving down a known drug route (Interstate 20), (3) that Jamison was driving a car that had been purchased on the East Coast 13 days prior, (4) that Jamison had a South Carolina Driver's License, and (5) that the vehicle Jamison was driving had a temporary tag from Pennsylvania. *See* Doc. No. 47 at pp.6-7 (collecting record citations). All of this information contributes to the "emerging facts"

---

³ This Court's summary judgment order accepts that Officer "McLendon's goal was to search Jamison's vehicle." *See* Doc. No. 62 at p.5. While this fact was relevant to the equal protection claim that already has been dismissed, it is completely irrelevant to the remaining Fourth Amendment claim. Again, an objective – rather than a subjective – standard applies.

that existed after the initial stop. *See United States v. Wolfe*, 370 Fed. App'x 549, 550 (5th Cir. 2010); *see also* Doc. No. 58 at p.10 (collecting authority).

To be clear, none of these facts were even necessary for Officer McLendon to seek Jamison's consent. It is perfectly lawful for a police officer to request consent to search during the time period when the officer is awaiting the results of a NCIC check. *See, e.g., United States v. Zucco*, 71 F.3d 188, 191 (5th Cir. 1995) (authorizing a request for "consent to search before or during the time of the NCIC check"). But it is no wonder that Officer McLendon sought Jamison's consent in light of the suspicious facts outlined above.[4]

Jamison of course does not deny that he provided Officer McLendon consent to search his vehicle; his argument instead is that consent was involuntarily given. *See* Doc. No. 54 at pp.24-26. This issue is addressed below, but it is mentioned here because of its relevance to the length of the encounter. If the consent was valid, then Jamison's duration argument falls by the wayside. "After [a suspect] consent[s] to a search, [an officer] need[s] no justification to prolong the encounter." *See United States v. Machuca-Barrera*, 261 F.3d 425, 435 (5th Cir. 2001). In other words, once Jamison provided consent, duration is no longer relevant.

**B. The search of Jamison's car**

Resolution of the consent question is governed by the six-factor test set forth in Officer McLendon's original summary judgment briefs. *See* Doc. No. 47 at p.9; Doc. No. 58 at pp.11-12 (identifying these six factors: voluntariness of the plaintiff's custodial status, presence of coercive police procedures, nature and extent of plaintiff's cooperation, plaintiff's awareness of

---

[4] In his summary judgment response, Jamison tried to discount all of the suspicious facts by arguing that they could be suggestive of completely innocent conduct. *See* Doc. No. 54 at p.24. The Supreme Court, however, recently rejected Jamison's argument. *See Wesby*, 138 S.Ct. at 588-89. *Wesby* explains that completely innocent conduct can nonetheless be suspicious and thus contribute to the reasonableness of an officer's actions. *Id.* at 588 ("[T]he relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts.") (quoted case omitted).

his right to refuse, plaintiff's education and intelligence level, and plaintiff's belief that no incriminating evidence will be found). Application of these factors shows that Jamison's consent was voluntary.

Two fundamental principles provide the starting point for addressing the question of consent. First, it is the plaintiff's burden in the civil context to establish that consent was involuntary. *See, e.g., Kaniff v. United States*, 351 F.3d 780, 789 (7th Cir. 2003); *see also Adair v. Bell*, 1995 WL 1945487, *8 (N.D. Miss. 1995).[5] Second, since the issue of consent is governed by a multi-factored test, it is precisely the type of issue for which qualified immunity ordinarily is appropriate. *See, e.g., McNeal v. Roberts*, 129 Fed. App'x 110, 110 (5th Cir. 2005); *see also Jordan v. Garrison*, 2014 WL 1379157, *12 (W.D. La. 2014) ("Plaintiff does not contend that his consent was not voluntary, but even had such a claim been made, voluntariness is an issue particularly subject to qualified immunity.").[6]

Jamison cannot overcome Officer McLendon's entitlement to qualified immunity where it is beyond dispute that four of the six factors weigh in favor of voluntariness. To be sure, Jamison admitted in his original summary judgment opposition that he was intelligent, that he "knew to a certainty that no drugs would be found[,]" that he was cooperative with Officer McLendon, and that he was aware of his right to refuse consent. *See* Doc. No. 54 at pp.25-26. Of the remaining two factors, it is far from clear that those weigh in Jamison's favor, but it does not matter in any event. The Fifth Circuit expressly has concluded that a suspect's consent was voluntary where he was not free to leave while awaiting a license check, and district courts in

---

[5] *See further Fortner v. Young*, 582 Fed. App'x 776 (10th Cir. 2014) ("[T]he burden to show consent was involuntary rests on the plaintiff in a civil case.").

[6] This Court's prior summary judgment order acknowledges this point in the ruling. *See* Doc. No. 62 at p.9 (discussing Fifth Circuit precedent holding that the fact-intensive reasonable suspicion inquiry was "precisely the type of issue for which a qualified immunity analysis is most appropriate").

this Circuit have held that far more coercive tactics[7] than placing an arm in a window did not invalidate consent. *See United States v. Huerta*, 252 Fed. App'x 694, 697 (5th Cir. 2007) (consent provided while license check was being conducted was voluntary); *United States v. Olivarria*, 781 F.Supp.2d 387, 395 (N.D. Miss. 2011) (consent provided while handcuffed was voluntary).

The just-provided analysis shows that Jamison's consent was voluntary. Significantly, however, Jamison's consent need not even actually have been voluntarily for Officer McLendon to be entitled to qualified immunity. The test is whether it is <u>arguable</u> that Jamison's consent was voluntary, not whether Jamison's consent was <u>actually</u> voluntary. *See, e.g., Lopera v. Town of Coventry*, 640 F.3d 388, 398 (1st Cir. 2011) ("We cannot say that no officer of reasonable competence could have reached the conclusion" that there was valid consent.); *see also McNeal*, 129 Fed. App'x at 110 (holding that there were genuine issues of material fact as to whether the plaintiff's consent was actually voluntary but nonetheless granting qualified immunity). The very fact that this Court has asked for supplemental briefing on the subject shows that there is at least reasonable debate on the issue, which is all that is necessary to grant Officer McLendon qualified immunity.[8]

Although the summary judgment order requested supplemental briefing on the voluntariness of Jamison's consent, *see* Doc. No. 62 at p.10, there is an alternative basis for the search: arguable probable cause. *See Banuelos-Romero*, 597 F.3d at 767 ("[I]f probable cause

---

[7] This Court's summary judgment order says that Officer McLendon made "repeated requests" to search Jamison's car and "plac[ed] his arm in Jamison's passenger window[,]" *see* Doc. No. 62 at p.6, but, even if this Court finds such conduct coercive, the Fifth Circuit recently emphasized that "coercion is only one of many factors courts consider in deciding if consent was knowing and voluntary." *See United States v. Cisneros*, 2018 WL 4492476, *1 (5th Cir. Sept. 18, 2018).

[8] Jamison's original summary judgment response hinted at a withdrawal-of-consent argument in the fact section of the brief, but he provided no corresponding discussion in the argument portion of the brief. *See* Doc. No. 54 at p.10. The reason Jamison failed to argue this point is because it is wrong as a constitutional matter and especially so as a qualified immunity matter. *See* Doc. No. 58 at pp.13-14 (collecting cases).

existed, Appellant's consent was not required for Trooper Dollar to search.").[9]  Like with the issue of consent, Officer McLendon was not required to have <u>actual</u> probable cause.  *See Wesby*, 138 S.Ct. 591 (explaining that, in the qualified immunity context, an officer is not required to have "actual probable cause").  "Arguable probable cause" is sufficient to trigger Officer McLendon's immunity.  *See Carr*, 2018 WL 3636563, *8 ("The plaintiff bears the significant burden of showing that Officer Hoover did not have at least arguable probable cause under the two-step qualified immunity analysis.").

All of the suspicious facts recited above provided arguable probable cause to search Jamison's car for drugs.  The Supreme Court recently emphasized that "[p]robable cause 'is not a high bar.'"  *See Wesby*, 138 S.Ct. at 586 (quoted case omitted).  If probable cause presents a low bar, then "arguable" probable cause of course presents an even lower bar.  *See, e.g., Cottam v. City of Wildwood*, 2018 WL 4293307, *1 (11th Cir. Sept. 10, 2018) ("Arguable probable cause is a lower standard than actual probable cause[.]").  The search in this case satisfies the very minimal standard[10] that applies to Officer McLendon's conduct.

Indeed, a reasonable officer in McLendon's shoes could have believed that there were drugs in the car, since Jamison was traveling from a known drug location down a known drug route in a car that had been purchased halfway across the country 13 days prior.  Add on the facts that Jamison had a South Carolina Driver's License and was driving a car with a temporary tag from Pennsylvania, and the search becomes even more reasonable.  "Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could—not necessarily

---

[9] *See also U.S. v. Vazquez-Villa*, 2012 WL 1473443, *6 (D. Kan. 2012) ("[T]he Court finds the validity or voluntariness of consent immaterial, because the search was legal even without consent. Consent to search a vehicle is unnecessary where probable cause exists.").

[10] To illustrate the minimal test for arguable probable cause, consider the recent case of *Alexandre v. City of Miami*, 2018 WL 2463904 (S.D. Fla. June 1, 2018).  Although the court found "it questionable whether the Individual Defendants had probable cause to arrest Plaintiff for inciting a 'riot[,]'" "the Court [wa]s compelled to find arguable probable cause for the arrest[,]" since "the bar is so low[.]"  *See Alexandre*, 2018 WL 2463904 at *3.

would—have believed that probable cause was present." *See, e.g., Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004).

For all of these reasons, the facts obtained by Officer McLendon provided him with arguable probable cause to search Jamison's vehicle or, at a minimum, arguable reason to believe Jamison's consent was voluntary. *See, e.g., U.S. v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010) (explaining that an officer needs either probable cause or consent to search a vehicle, not both). Qualified immunity is appropriate.

## CONCLUSION

Qualified immunity can be "disquiet[ing]" to courts because it necessarily leaves some victims of constitutional violations without a civil remedy. *See Zadeh v. Robinson*, 2018 WL 4178304, *10-11 (5th Cir. Aug. 31, 2018) (Willett, J., concurring). To be sure, the doctrine has received heavy criticism from all sides of the political spectrum. *See, e.g.,* Brief of Cross-Ideological Groups Dedicated to Ensuring Official Accountability, Restoring the Public's Trust in Law Enforcement, and Promoting the Rule of Law as Amci Curiae in Support of Petitioner, *Almighty Supreme Born Allah v. Lynn Milling*, No. 17-8654 (2018), 2018 WL 3388317. No matter: Qualified immunity is the Law of the Land, with the Supreme Court having reversed at least 14 denials of qualified immunity within the past seven years. *See Wesby v. District of Columbia*, 816 F.3d 96 (D.C. Cir. 2016) (Kavanaugh, J., dissenting) (collecting 11 reversals prior to several more in 2017 and 2018).

Officer McLendon is entitled to qualified immunity because Jamison cannot identify any particularized case decided before July 29, 2013 that holds that Officer McLendon's conduct was unconstitutional. *See Pearson v. Callahan*, 555 U.S. 223, 227 (2009) (holding that the law must be "clearly established at the time" of the alleged misconduct). In fact, the authority cited in Officer McLendon's original filings and throughout this supplemental brief show that far more

egregious conduct has been held inactionable. Summary judgment on the remaining claims should be granted.

Dated: October 31, 2018.

> Respectfully submitted,
>
> **PHELPS DUNBAR, LLP**
>
> BY:  */s/ G. Todd Butler*
> G. Todd Butler, MS Bar #102907
> 4270 I-55 North
> Jackson, Mississippi 39211-6391
> Post Office Box 16114
> Jackson, Mississippi  39236-6114
> Telephone: 601-352-2300
> Telecopier: 601-360-9777
> Email: butler@phelps.com
>
> **ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I, Todd Butler, certify that I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to the following counsel of record:

    Victor I. Fleitas, P.A.
    452 North Spring St.
    Tupelo, MS 38804
    (662) 840-0270
    fleitasv@bellsouth.net

    ***ATTORNEY FOR PLAINTIFF***

Dated: October 31, 2018.

                                            */s/ G. Todd Butler*
                                            G. TODD BUTLER